BERTRAM L. ALDRICH, Respondent, *v.* BORDEN'S CONDENSED MILK COMPANY, Appellant, Impleaded with Another.

*Aldrich* v. *Borden's Condensed Milk Co.*, 136 App. Div. 893, reversed.
(Argued February 28, 1911; decided March 14, 1911.)

APPEAL from a judgment entered December 18, 1909, upon an order of the Appellate Division of the Supreme Court in the second judicial department, which reversed an order of

the court at a Trial Term setting aside a verdict in favor of plaintiff and granting a new trial and directed the reinstatement of said verdict.

*Grant C. Fox* and *Thomas M. Rowlette* for appellant.

*Frederick E. Fishel* for respondent.

CHASE, J.    The plaintiff was riding in a street car, and as it was crossing a street running at right angles to the street upon which the car was proceeding, a horse owned by the defendant and attached to one of its milk wagons ran violently into the car and one of the thills of the wagon went through the side of the car and against the back of the plaintiff causing the injury for which this action is brought.

The plaintiff gave testimony to show that the horse was running away wholly uncontrolled, and that there was no one in the wagon.    The defendant gave testimony to show that the horse was not vicious, and that while being driven by a competent driver he became badly frightened when about five blocks from where the accident occurred and ran away, notwithstanding the driver did all that he reasonably could do to control him from the time that he started to run up to the time of the collision.    It is not claimed that the driver was in the wagon at the time the horse started and was thrown out between that time and the time of the collision.

Upon the evidence it was a question of fact whether the horse was attended by a driver or whether he ran away while left unattended in a public street, and that question was properly left to the jury.    The court also left to the jury a question as to the alleged negligence of the defendant in failing to furnish a suitable harness.    Several persons who saw the horse running prior to the collision testified that the harness was drawn to one side, and that it had dropped down around the hindquarters of the horse.

A man who testified that he was driving the horse says that when he was about half way between the place where the horse started to run and the place of the collision he reined the horse to one side of the street so that the wheels of the wagon struck against the curb, hoping thereby to better con-

trol him, and that as the wagon struck the curb the breeching strap of the harness dropped about the hindquarters of the horse and added to his fright. After the accident it was found that a ring that had held the straps which connected the breeching strap to the back strap had been broken. It did not appear that the broken ring was found. The harness other than as stated was unbroken and uninjured. The harness was in court at the time of the trial and was shown to the jury, but a new ring had been placed therein. No testimony was given to show that the wagon or harness was unsuitable for the purpose for which it was used, but testimony was received on behalf of the defendant to show that the harness, with the other harnesses used by the defendant, was inspected, cleaned and oiled, weekly, and the man who harnessed the horse on the morning of the accident testified that the harness was then in perfect condition. The court in charging the jury said:

"I do not think there is much discussion about the harness. The harness, they say, was not safe. The only proof of that was that one of the rings broke which let the breeching slip down on the horse's legs. You have seen the harness, and, considering the kind of wagon this was, and considering the kind of work that was being done, it is for you to say whether that ring was a suitable ring or not. The fact that it broke is not of itself proof that it was unsuited for the work which it was called upon to do."

At the end of the charge counsel for the defendant said: "I ask your honor to charge that there is no evidence that the defendant was negligence in not using suitable wagon and harness." The court replied, "I think I had better leave that to the jury," and an exception was taken by the defendant.

The counsel for the defendant then said: "I ask your honor to charge that the breaking of the ring is no evidence of the insufficiency of the harness." The court replied, "I think I have said that to the jury."

The fact that the harness was before the jury was not evidence for their consideration so far as the ring is concerned. The ring that was broken was not described except in a general way and no testimony was offered to show that it was

unsuitable for the harness or that it was negligence on the part of the defendant to use the ring that was used as a part of the harness.

The court should have charged the jury as requested by the defendant in regard to the harness. The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and COLLIN, JJ., concur.

Judgment reversed, etc.